IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                    *
CHARLES BARTZ
                                    *
     Plaintiff,
                                    *
v.                                          CIVIL NO.: WDQ-06-1362
                                    *
JOHN POTTER, Postmaster
General                             *

     Defendant.                     *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Charles H. Bartz, III has sued John E. Potter, Postmaster

General of the United States Postal Service (the "Service"), for

disability discrimination under §§ 501 and 504 of the

Rehabilitation Act of 1973, as amended (the "Rehabilitation

Act").[1]  Pending is the Service's motion to dismiss or, in the

alternative, for summary judgment.  For the following reasons,

summary judgment will be granted.


I.  Background

A.  Facts

     Bartz, an employee of the Service since 1983, entered the

Service's Associate Supervisor Program in 1998.  Compl. ¶ 6.

After completing the program's intial training period, he was

---

[1] 29 U.S.C. §§ 791, 794.

assigned to the Service's Southern Maryland Processing and

Distribution Center as a level-15 Associate Supervisor of Tour

Three, the night shift, which ran from 3 to 11 p.m.  *Id.*, Pl.'s

Opp'n 2.

In December 1999, Bartz was hospitalized for two days for

major depression "due to the stress of working evenings and long

hours."  Compl. ¶ 8.  Following his release, he began therapy,

including medication of his symptoms, under the care of a

psychiatrist, Dr. Richard Silver, and a mental health counselor,

Gena Harmon.  *Id.*, Pl.'s Opp'n 29.

In April 2000, Bartz, was taken off his medication for three

days during a hospitalization for kidney stones, which

precipitated a second 4-day hospitalization for suicidal

ideation.  Compl. ¶ 11, Pl.'s Ex. 4 (Merit Systems Protection

Board ("MSPB") Hearing Tr., June 18, 2003) at 18-19.

Following his release in April, Bartz requested a transfer

to Tour Two, the day shift, from his supervisor, Terry Douglas,

based on his medical providers' recommendations that working days

would ameliorate his condition.  Compl. ¶ 12.  Bartz provided

Douglas with letters from Dr. Silver and Harmon to verify his

alleged disability and justify the proposed accommodation.  *Id.*

¶¶ 13-15.

After Douglas did not respond, Bartz again requested a

transfer to the day shift in May 2000.  *Id.* ¶ 15.  Douglas denied

the request, and the same month reassigned Bartz to Tour Three, the early-morning, "graveyard" shift.  *Id.* ¶¶ 16, 18.

Bartz then approached a senior manager, Theresa Gibbs, to complain about the transfer to Tour Three and to renew his request for a transfer to the day shift.  *Id.* ¶ 19.  Gibbs requested further documentation from Bartz's medical providers to justify the accommodation, which was provided by his therapist, Harmon, in late June, after Bartz was again hospitalized for his depression.  *Id.* ¶¶ 20-21.

After returning to work on the graveyard shift in June, Bartz was told by Gibbs that his requested transfer would not be granted.  *Id.* ¶ 22.  Bartz then appealed to his Tour One supervisor, Paula Johnson, who told him there was nothing she could do.  *Id.* ¶ 23.  In late August, Bartz entered a three-week outpatient program to treat depression.  *Id.* ¶ 24, Pl.'s Opp'n 8.

On his return to work in late September, Bartz was evaluated by the Service's medical doctor, Dr. Augusto Rodriguez, who received correspondence from Dr. Silver reiterating Bartz's diagnosis of major depressive disorder and the psychiatrist's recommendation that Bartz be transferred to the day shift. Compl. ¶ 25-26.  Dr. Rodriguez chose not to recommend Bartz's transfer to the day shift, and instead cleared him to resume work on the graveyard shift.  *Id.* ¶ 27.

Bartz began a three-month leave of absence in October 2000,

and resigned from the service in February 2001.    *Id*. ¶¶ 28, 30.


B.  Procedural History

On November 2, 2000, Bartz contacted the Service's Equal
Employment Opportunity ("EEO") counselor to make an informal
complaint of discrimination based on his race (Caucasian) and
alleged disability.  Pl.'s Opp'n. 16.  He filed a formal
complaint with the Service on May 9, 2001, alleging disability
discrimination for failure to accommodate and constructive
discharge.  *Id*.  After the Service completed its investigation,
Bartz requested a hearing with an EEO Commission ("EEOC")
administrative judge.  *Id*.

Deciding that Bartz's constructive discharge claim provided
him appeal rights to the MSPB, the administrative judge remanded
the case to the Service for processing.  *Id*.; Def.'s Supp. Mem.
11.  On July 22, 2002, the Service issued a Final Agency Decision
dismissing Bartz's claims, and he appealed to the MSPB.  Pl.'s
Opp'n. 16.  The MSPB rejected the constructive discharge claim,
and returned the case to the EEOC.  *Id*. at 17; Def.'s Supp. Mem.
11.

On September 8, 2004, the EEOC administrative judge granted
judgment for the Service on Bartz's disability-discrimination
claim, and the Service followed with a Notice of Final Action
adopting the administrative judge's decision on Sept 21.  Def.'s

Supp. Mem. 11.   On October 20, 2004, Bartz appealed to the

EEOC's Office of Federal Operations, which affirmed the

administrative judge's decision on March 2, 2006.  *Id.*

Bartz filed this suit on May 30, 2006.


II.  Discussion

A.  Standard of Review

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a

motion to dismiss for failure to state a claim for relief should

be granted "only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the

allegations."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514

(2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73

(1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d

1130, 1134 (4th Cir. 1993).

If the court considers matters outside of the pleading on a

Rule 12(b)(6) motion, it shall treat the motion as one for

summary judgment, to be disposed of under Rule 56, and provide

all parties a "reasonable opportunity to present all material

made pertinent to such a motion."  Fed. R. Civ. P. 12(b).  "When

a party is aware that material outside the pleadings is before

the court, the party is on notice that a Rule 12(b)(6) motion may

be treated as a motion for summary judgment."  *Gay v. Wall,* 761

F.2d 175, 177 (4th Cir. 1985).

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Only "facts that might affect the outcome of the suit under the governing law" are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.  The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257.  The mere existence of a "scintilla" of evidence is insufficient.  *Id*. at 252.  If the nonmoving party fails to show an essential element of his case on which he will

bear the burden of proof at trial, all other facts are rendered immaterial, and the moving party is entitled to a judgment as a matter of law.  *Celotex*, 477 U.S. 317, 323; Fed. R. Civ. P. 56(e).

B.  Analysis

The Service argues for dismissal or summary judgment on the grounds that Bartz: (1) failed to timely exhaust his administrative remedies; (2) cannot show that (a) he is an "individual with a disability" entitled to the Rehabilitation Act's protection or (b) the Service denied him a reasonable accommodation; and (3) cannot demonstrate a *prima facie* case of a hostile work environment because he is not an individual with a disability.

1.  Timely Exhaustion of Administrative Remedies

The Service contends that Bartz's claims are procedurally barred because he failed to bring his complaints to the Service's EEO Counselor within 45 days of the rejection of his shift-transfer requests in May and June 2000.

"A federal employee seeking to file an action based on the Rehabilitation Act must first exhaust his administrative remedies promulgated pursuant to Title VII and set forth in EEOC regulations."  *Emmert v. Runyon*, No. 98-2027, 1999 WL 253632, at

7

*2 (4th Cir. Apr. 29, 1999) (unpublished opnion); *see also Laber v. Harvey*, 438 F.3d 404, 415-16 (4th Cir. 2006) (Title VII plaintiffs must exhaust administrative remedies).  Administrative remedies for employment-discrimination claims are governed by the procedural requirements promulgated in 29 C.F.R. §§ 1614.101-1614.707.  29 C.F.R. § 1614.103.  Those regulations require a federal employee with a discrimination complaint to consult with his or her employer's EEO counselor before filing a formal administrative complaint against the agency.  29 C.F.R. § 1614.105(a).  The aggrieved employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  *Id*.  Generally, an agency must dismiss an entire administrative complaint that fails to comply with the 45-day limit in § 1614.105.  29 C.F.R. § 1614.107(a)(2).

Failure to comply with the time limits required for administrative remedies may preclude a federal employee from maintaining a workplace-discrimination action in district court. *Zografov v. V.A. Medical Center,* 779 F.2d 967, 970 (4th Cir. 1985).  However, a plaintiff's failure to timely exhaust administrative remedies "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable

tolling."  *Zipes v. Trans World Airlines, Inc,.* 455 U.S. 385, 393

(1982); *accord Zografov,* 779 F.2d at 969.

   "It is well settled that a federal agency does not waive its

right to object to untimely filings merely by accepting a

complaint for investigation."  *Blount v. Shalala*, 32 F. Supp. 2d

339, 341 (D. Md. 1999) (*citing Rowe v. Sullivan*, 967 F.2d 186,

191 (5th Cir. 1992); *Boyd v. U.S. Postal Serv*., 752 F.2d 410, 414

(9th Cir. 1985)); *accord Ester v. Principi*, 250 F.3d 1068, 1072

n.1 (7th Cir. 2001).  But the question remains, without

definitive guidance from the Fourth Circuit, whether an  agency

waives its timeliness defense for a subsequent lawsuit by never

asserting it throughout the administrative proceedings.

   A uniform answer from other circuits is lacking on this

question.  The Fifth Circuit maintains the view that "[i]n order

to waive a timeliness objection, the agency must make a specific

finding that the claimant's submission was timely."  *Rowe,* 967

F.2d at 191.  However, a plurality of circuits agree that an

agency waives the defense of timeliness in a subsequent lawsuit

when it decides a complaint on its merits without addressing the

procedural default.  *Bowden v. U.S.,* 106 F.3d 433, 438-39 (D.C.

Cir. 1997); *Ester*, 250 F.3d at 1073; *Hall v. Dep't of Treasury,*

264 F.3d 1050, 1061 (Fed. Cir. 2001); *Bruce v. U.S. Dep't of*

*Justice,* 314 F.3d 71, 75 (2nd Cir. 2002); *Mercado v. Ritz-Carlton*

*San Juan Hotel, Spa & Casino,* 410 F.3d 41, 45 (1st Cir. 2005).

The policy arguments made by the Seventh Circuit for the
plurality view are convincing.  *See Ester*, 250 F.3d at 1072-73.
Requiring agencies to raise procedural defenses during
administrative proceedings parallels the requirement that
employee plaintiffs raise their procedural objections during
those same proceedings or lose them by waiver.  *Id*. at 1072
(*citing U.S. v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33,37
(1952).  Requiring all procedural objections, including those of
the agency, to be raised during agency proceedings further
develops the record for review, encourages agencies to assert
those defenses at an early stage, and reduces the potential
prejudice to plaintiffs forced to confront a claim of
untimeliness for the first time in court.  *Id*.

Bartz argues that the Service waived its timeliness defense
by failing to assert it during administrative proceedings.
Indeed, the Court finds that the Service disposed of Bartz's
claims on their substantive merits without ever raising Bartz's
alleged procedural default.  Pl.'s Opp'n Exs. 27, 29.[2]
Accordingly, the Court finds that the Service has waived its

---

[2] Moreover, statutes of limitation are meant to put
defendants on notice of adverse claims and save them, and the
courts, from the attenuation of evidence that comes with stale
claims.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352
(1983); *Gould v. U.S. Dept. of Health & Human Services,* 905 F.2d
738, 741-42 (4th Cir. 1990).  The Service cannot seriously argue,
after its own thorough investigation of the substance of Bartz's
claims, and its decision to reject them on their merits, that it
will be prejudiced by a lack of notice or a dearth of evidence.

timeliness defense to Bartz's claims, and will evaluate their
substantive merits according to the standard for summary
judgment.

2.   Failure to Accommodate an Individual with a Disability

In Count I, Bartz claims that the Service violated §§ 501
and 504 of the Rehabilitation Act by failing to provide him with
a reasonable accommodation of his depression, a transfer to the
day shift.

For the purpose of evaluating the elements of a federal
employment discrimination claim, both §§ 510 and 504 incorporate
the standards provided under Title I of the Americans with
Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12111-12117,
and ADA Title V sections 501 through 504 and 510, 42 U.S.C. §§
12201-12204 and 12210, and as set forth in the EEOC's ADA
regulations at 29 C.F.R. part 1630.  *Hooven-Lewis v. Caldera,* 249
F.3d 259, 268 (4th Cir. 2001); 29 U.S.C. §§ 791(g), 794(d)); 29
C.F.R. § 1614.203(b).

42 U.S.C. § 12112 provides in part that:

> [n]o covered entity shall discriminate against a qualified
> individual with a disability because of the disability of
> such individual in regard to job application procedures, the
> hiring, advancement, or discharge of employees, employee
> compensation, job training, and other terms, conditions, and
> privileges of employment.

42 U.S.C. § 12112(a).  The statute further defines "discriminate"
to include:

not making reasonable accommodations to the known physical
or mental limitations of an otherwise qualified individual
with a disability who is an applicant or employee, unless
such covered entity can demonstrate that the accommodation
would impose an undue hardship on the operation of the
business of such covered entity.

42 U.S.C. § 12112(b)(5)(A).

The Service argues that Bartz fails to state a claim under
the Rehabilitation Act because he does not qualify as an
"individual with a disability" under the Act.

The preliminary determination of whether a plaintiff meets
the statutory definition of an "individual with a disability,"
and therefore can bring a claim under the Rehabilitation Act, is
a question of law for the Court. *Hooven-Lewis,* 249 F.3d at 268.

For the purposes of employment discrimination claims, the
Rehabilitation Act defines the term "individual with a
disability" to mean:

> any person who--
> (i) *has a physical or mental impairment which substantially
> limits one or more of such person's major life activities;*
> (ii) has a record of such an impairment; or
> (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B) (emphasis added).

29 C.F.R. § 1630.2(h) defines a "physical or mental
impairment" as, *inter alia*, "[a]ny mental or psychological
disorder, such as mental retardation, organic brain syndrome,
emotional or mental illness, and specific learning disabilities."

Section 1630.2(i) defines "major life activities" to mean
functions such as caring for oneself, performing manual tasks,

12

walking, seeing, hearing, speaking, breathing, learning, and

working."

The regulation states that an impairment "substantially

limits" a major life activity when the affected individual is:

> (i) Unable to perform a major life activity that the average
> person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or
> duration under which an individual can perform a particular
> major life activity as compared to the condition, manner, or
> duration under which the average person in the general
> population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).  The regulation specifies that:

> [w]ith respect to the major life activity of working--
>
> (i) The term substantially limits means significantly
> restricted in the ability to perform either a class of jobs
> or a broad range of jobs in various classes as compared to
> the average person having comparable training, skills and
> abilities. The inability to perform a single, particular job
> does not constitute a substantial limitation in the major
> life activity of working.

29 C.F.R. § 1630.2(j)(3).  As the Supreme Court has further

instructed:

> To be substantially limited in the major life activity of
> working, then, one must be precluded from more than one type
> of job, a specialized job, or a particular job of choice.
> *If jobs utilizing an individual's skills (but perhaps not
> his or her unique talents) are available, one is not
> precluded from a substantial class of jobs.*  Similarly, if a
> host of different types of jobs are available, one is not
> precluded from a broad range of jobs.

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492 (1999)

(emphasis added).  The Court also ruled that the mitigating

13

effects of medication and other corrective measures must be taken
into account when judging whether a person is substantially
limited in a major life activity.  *Id*. at 482.

The parties do not contest that Bartz's depression is a
mental impairment under 29 C.F.R. § 1630.2(h).  Def.'s Supp. Mem.
20; Pl.'s Opp'n 26.  Rather, the Defendant contends that Bartz's
depression does not rise to the level of a disability because it
does not substantially limit a major life activity.  Bartz
alleges that, while working on the night and graveyard shifts,
his depression "limit[ed] his ability to . . . sleep, care for
himself or his children, eat, performs household functions,
procreate, and remain not suicidal."  Compl. ¶ 43.  Bartz also
asserts in his opposition memorandum that his depression affected
his ability to work.  Pl.'s Opp'n 26.  Bartz offers evidence
that, even while undergoing treatment and taking medication for
his depression, he continued to suffer from sleeplessness, mood
swings, anxiety, paranoia, lack of libido, and was hospitalized
three times for contemplating suicide.  Pl.'s Opp'n Ex. 4 at 19-
22, 25-28, 46-52, Ex. 10 (MSPB Hearing Tr., June 17, 2003) at
128.  Bartz also argues that his ability to work was
substantially limited, as his depression "effectively prohibited
[him] from working a broad class of jobs, those that required
night work."  Pl.'s Opp'n 30.

Bartz fails to show that his depression alone, when treated

14

with therapy and medication, substantially limited his major life

activities.  *Sutton,* 527 U.S. at 482.  The evidence indicates

that it was only when Bartz was subject to the added stress and

odd hours of the night or graveyard shift that his major life

activities reached a level of substantial impairment.  Dr.

Richard Silver, Bartz's psychiatrist, testified that the "process

of trying to move from night shift to day shift, . . . as well as

the night shift itself, was causing [Bartz] difficulty," and that

> he was getting worse because of his work on the night shift
> . . . and one of the key factors in both Mr. Bartz's
> thinking and in my thinking, was the stress that was being
> created by the night shift."

Pl.'s Opp'n 3, Ex. 10 at 126, 137, 143-144.  Bartz's statements

that he "needed to work Tour Two to recover from [his] illness,"

and that "[he] could no longer function working on the night

shift," indicate that, if Bartz had been working daytime hours,

his major life activities would not have been substantially

limited.  Pl.'s Opp'n Ex. 1 (Service's Sept. 5, 2001 EEO

Investigative Affidavit) at 2, Ex. 4 at 17.  Bartz's argument

breaks down to this: his depression, coupled with the graveyard

or night shift, was disabling; but, with the stress of the odd

hours removed, his impairment would not substantially limit his

major life activities.  Thus, Bartz's depression only limited his

ability to work at night, so that his major life activities would

not *become* substantially limited.

  But Bartz's inability to work nights because of a mental

impairment was not a substantial limitation on his ability to work.   Contrary to Bartz's assertion, being precluded from jobs "that require[] night work" does not necessarily mean he is "restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes."   29 C.F.R. § 1630.2(j)(3).   Bartz does not assert that his particular "training, skills and abilities" required night work, or that other day jobs utilizing those skills were not available.   *Id.; Sutton,* 527 U.S. at 492.   Bartz testified that the Service provided him with vacancy announcements for level-16 day-shift positions, but that he chose not to apply because they did not appeal to him.   Def.'s Supp. Mem. Ex. 1 (MSPB Hearing Tr., June 18, 2003) at 115-16, Ex. 3 (Bartz Depostion) at 124.

The terms of the Rehabilitation Act and the ADA "need to be interpreted strictly to create a demanding standard for qualifying as disabled."   *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002).   Bartz has not shown that, as a matter of law, he meets this demanding standard for invoking the protection of the Rehabilitation Act.   Accordingly, the Court will grant summary judgment for the Service on Count I.

3.   Hostile Work Environment Based on Disability

16

In Count II, Bartz claims that the Service's unwillingness to recognize or accommodate his alleged disability, failure to engage him in an interactive process, and hindering him from performing his duties, along with abuse and taunting by his supervisors regarding his depression, created a hostile work environment that ultimately forced him to quit.

As Bartz is not an individual with a disability, he is not entitled to bring an action for hostile work environment under the Rehabilitation Act.  *Hooven-Lewis,* 249 F.3d at 268. Accordingly, the Court will grant summary judgment for the Service on Count II.


III.  Conclusion

For the reasons stated above, the Court will grant summary judgment for the Service.




March 6, 2007                           _____/s/_____
Date                                    William D. Quarles, Jr.
                                        United States District Judge

17